Dc5icans ag                    SENTENCE

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        13 Cr. 641 CS

5   STEPHEN CANNELLA,

6              Defendant.

7   ------------------------------x

8                                   December 5, 2013
                                    4:10 p.m.
9                                   White Plains, N.Y.

10  Before:

11                    HON. CATHY SEIBEL,

12                                  District Judge

13                      APPEARANCES

14  PREET BHARARA
         United States Attorney for the
15       Southern District of New York
    ILAN GRAFF
16       Assistant United States Attorney

17  FEDERAL DEFENDERS UNIT
         Attorney for Defendant
18  JASON SER

19
                        SENTENCE
20

21

22

23

24

25

Dc5icans ag                    SENTENCE

1          THE COURTROOM DEPUTY:  United States v. Stephen

2     Cannella.

3          MR. GRAFF:  Ilan Graff for the government.

4          MR. SER:  Jason Ser, Federal Defenders, for

5     Mr. Cannella.

6          THE COURT:  Good afternoon.  Have a seat, everyone.

7     Good afternoon Mr. Graff, Mr. Ser, Mr. Cannella.

8          MR. SER:  Good afternoon, Judge.

9          THE COURT:  Let me start by putting on the record what

10    I've received in connection with the sentencing.  I have the

11    presentence report dated November 22nd.  I have Mr. Ser's

12    sentencing memorandum with exhibits dated December 3rd.  And I

13    have a letter from Dr. Murray dated December 4th.  Is that

14    everything I should have?

15         MR. GRAFF:  Yes, your Honor.

16         MR. SER:  Yes, your Honor.

17         THE COURT:  All right.  Mr. Cannella, have you read

18    the presentence report and the addendum?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Have you discussed them with Mr. Ser?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Mr. Ser, you've read the presentence

23    report and the addendum and discussed them with your client?

24         MR. SER:  Yes, your Honor.

25         THE COURT:  Do you have objections to the factual

Dc5icans ag                    SENTENCE

1   recitation in the presentence report?

2           MR. SER:  No, your Honor.

3           THE COURT:  Does the government have any objections to

4   the factual recitation in the presentence report?

5           MR. GRAFF:  No, your Honor.

6           THE COURT:  So the findings of fact in the presentence

7   report are my findings of fact.  Before I hear you both, let me

8   just ask a question about something that confused me.  The

9   presentence report in describing the offense conduct describes

10  an undercover, I don't know if it was an agent, but an

11  undercover person working with the FBI going onto the

12  peer-to-peer file-sharing program, connecting with defendant,

13  and observing that he was sharing more than 7600 files.

14          Then, Mr. Ser's memo, which makes what I think are

15  some valid arguments about why I should believe his client that

16  he was trying to get rid of this stuff, discusses 47 videos

17  that were deleted and a bunch of stuff that was found, hundreds

18  of files that were found in cache files and some that were in

19  unallocated space.  I guess what I'm trying to figure out, if

20  there were 7600 on April 17, 2012 and when the agents went and

21  did the search -- the date of which I don't have in front of

22  me -- on August 1, 2012, where had all the 7600 gone?  How many

23  were left?

24          MR. GRAFF:  Your Honor, I believe I'm in a better

25  position to speak to that particular question than Mr. Ser,

Dc5icans ag                    SENTENCE

1   although he is certainly free to disagree.  I believe that the

2   pertinent number of files here is what appears in paragraph 13,

3   that is, the 1282 images and 82 videos that were actually

4   recovered from the computer.  The earlier number, the 7600

5   number, that's a discrepancy that I have discussed with one of

6   the agents in the case.  My understanding of what the 7600

7   represents is the total number of files that were being shared

8   by Mr. Cannella rather than the total number of files

9   containing child pornography.  That is, some number of those

10  files that were being shared might have contained other things.

11          THE COURT:  Okay.  So it could be movies, music,

12  whatever.

13          MR. GRAFF:  That is my best understanding of the

14  discrepancy.  But I believe for our purposes here, what is

15  relevant are the materials found on the computer.

16          THE COURT:  The 1282 images and the 82 videos, of

17  those how many were, I understand they're all recoverable, how

18  many of them does it appear that Mr. Cannella had deleted or

19  not downloaded, wasn't saving is what I'm asking.

20          MR. GRAFF:  I have no disagreement with the factual

21  recitation in Mr. Ser's memo, that is, I forget the precise

22  number that he adduced, but there are numbers that I've

23  discussed with reference to this case, and we do not disagree

24  with his assessment as to how many were moved to the trash

25  file, how many were in cache files.  These are all files that

Dc5icans ag                    SENTENCE

1   were present on the computer, not necessarily files at the

2   moment that the computer was searched in some kind of saved

3   folder.

4          THE COURT:  And are either of you in a position to

5   tell me, out of the 1282, 200 were saved and a thousand were in

6   these sort of secondary spaces or half were in secondary spaces

7   and half were saved?

8          MR. SER:  I think I indicated in one paragraph with

9   regard to the line wire there were four complete files being

10  shared and there were 28 incomplete files in the line wire

11  program.  And then my recollection is a very large majority

12  were cache files.  This isn't the kind of case where we have

13  any kind of systemic filing system, where we have folders.

14         MR. GRAFF:  I don't have reason to doubt what Mr. Ser

15  is saying.  And I'm happy to sort of look for a more specific

16  answer to the extent that, to the extent that it's helpful to

17  your Honor.  The only point that I would emphasize is that in

18  addition to the certainly large number of files that were in

19  cache files, there was also a significant number that were

20  neither shared nor in cache files, but were saved on the

21  computer.  Now, I realize "a significant number" is a bit

22  vague, and I unfortunately can't be more specific, but it was

23  not that there was a vanishingly number of files that were

24  accessible and everything else was a product of browsing.

25         THE COURT:  All right.  That's helpful.

Dc5icans ag                    SENTENCE

1          I have one more question for you, Mr.~Graff, and that

2    question relates to the time Mr. Cannella's already done and

3    been in for and how much of it, if any, is going to be credited

4    to his state sentence and how much of it is going to be

5    credited to his federal sentence.  What can you tell me on that

6    subject?

7          MR. GRAFF:  I've spoken to a representative of the

8    Bureau of Prisons and my best understanding is that from the

9    moment -- first of all, that the time he did prior to making

10   bail, of course, would be counted towards his federal sentence.

11   And in addition, that the time since his bond was exonerated

12   here and he was remanded federally should also be counted

13   toward his federal time.  The time that he did when he was, the

14   time that he did before that occurred, that is when he was

15   initially remanded in the state, which was about three weeks,

16   22 days.  It is unclear exactly how that would be treated with

17   respect to a federal sentence.  That is, on the one hand the

18   underlying conduct is clearly the same conduct as in the

19   federal case.  On the other hand, committing that conduct while

20   on state probation is arguably a totally separate offense.

21          THE COURT:  The federal bond was exonerated on October

22   17 according to Mr. Ser's letter.  I'm at the bottom of page 9.

23          MR. GRAFF:  In that case, your Honor, it would be the

24   period of time from October 8 to October 17th.  That would be

25   in that dubious space.  From October 17th forward would

Dc5icans ag                    SENTENCE

1    presumably be counted toward the federal sentence.

2              THE COURT:  Okay.  You can correct me if I'm wrong on

3    this, Mr. Ser, all of the time that Mr. Cannella has done so

4    far will be credited to his federal sentence with the possible

5    exception of October 8th to October 17th, do I have that right?

6              MR. SER:  What happened was, we have the eight days

7    prerelease on bond and then October 8th he goes into state

8    court.  I filed for exoneration of bond and remand order which

9    Judge Smith granted.  Kerry Lawrence was on the state side of

10   the case and he had the state judge release Mr. Cannella on his

11   own recognizance which effectively triggered his federal

12   custody time to begin accruing.  The notice I had was October

13   30th was the date it began accruing.  So the time between the

14   8th and the 30th was the state time, the 22 days.

15             THE COURT:  Even though the federal bond was

16   exonerated on the 17th, it wasn't until the 30th that the state

17   judge --

18             MR. SER:  -- released him on his own recognizance.

19   And then Mr. Lawrence went back and I believe the judge

20   rescinded the release on his own recognizance order and by then

21   Mr. Cannella was a federal ward.

22             THE COURT:  So there's 22 days that the Bureau of

23   Prisons may or may not give credit for.

24             MR. GRAFF:  I may have provided misinformation to the

25   Bureau of Prisons to the extent that I communicated to them

Dc5icans ag                    SENTENCE

1    that the date of the exoneration of the federal bond was the

2    date that he was then remanded to federal custody.  I presented

3    that to them in error.  It may be that it was the 22 days

4    rather than the 9 days.

5            THE COURT:  It wasn't until the state judge said I

6    wash my hands.  Mr. Cannella had retained counsel in the state

7    case?

8            MR. SER:  His father retained Mr. Lawrence only for

9    the probation proceeding, and he actually had a state-appointed

10   18B Panel attorney literally up until a week before the release

11   on his own recognizance occurred.

12           THE COURT:  I shouldn't be concerned that Mr. Cannella

13   has some money stashed away somewhere that he should be giving

14   to the government for your services?

15           MR. SER:  No, your Honor.

16           THE COURT:  Does the government wish to be heard?

17           MR. GRAFF:  I have no reason to doubt any of the

18   factual recitations in Mr. Ser's memo, at least as they pertain

19   to this defendant's individual circumstances and history, nor

20   do I have any, nor does the government have any cause to

21   quibble with the factual representations in the presentence

22   report.

23           I want to speak briefly about a few facts that are

24   given less prominent placement in Mr. Ser's memorandum.  Before

25   I do so, I did want to speak to the inconsistency between the

Dc5icans ag                          SENTENCE

guidelines range contemplated by the plea agreement and the

guidelines range in the presentence report.  The difference in

the range as explained in the presentence report is entirely

attributable to the four-point enhancement that under 5 -- is

attributable to the --

            THE COURT:  Sadistic and masochistic.

            MR. GRAFF:  There you go, your Honor.  The government

doesn't disagree that that enhancement would properly be

applied here.  I say only that with respect to the government's

position on this defendant's sentence, we honor our commitment

in the plea agreement with respect to the stipulated guidelines

range.  I note only with respect to balancing this defendant

against other similarly situated defendants and trying to craft

an appropriate sentence, this was a defendant who had a

previous criminal conviction at the time of the offense

conduct.  He was on probation, that is, on notice that behaving

lawfully was of utmost importance.  There were a large number

of images at issue here.  Certainly no disagreement over a

thousand.  And at least some fraction of those were made

available to others.  There were also images that included

prepubescent minors which factors into the guidelines

calculation and those are prepubescent minors and other people

who were revictimized by the offense conduct here.

            To the extent that there are other factors adduced by

defense counsel in his sentencing memorandum that are

Dc5icans ag                    SENTENCE

1    appropriate for your Honor's consideration, I note only that

2    some of those have already been, for want of a better term,

3    priced into the guidelines calculation here.  That is, the

4    defendant was originally charged by complaint with both

5    possession and distribution, and after conferring -- I think

6    it's clear to the Court how a distribution charge might arise

7    from the facts set forth in the presentence report.  After

8    conversation with Mr. Ser and discussion of some of the factors

9    that are now before the Court with respect to the defendant's

10   sentencing, the government agreed to allow the defendant to

11   plead strictly to the possession charge which not only removes

12   the mandatory minimum in this case but also removes additional

13   enhancements that might have further increased the guidelines

14   range.  I offer that only as additional factors for your Honor

15   to consider with respect to the sentence here.  The government

16   submits that a guideline sentence is reasonable and stands by

17   the stipulated guideline sentence contemplated by the plea

18   agreement.

19            THE COURT:  Which is 57 to 71.

20            MR. GRAFF:  Yes, your Honor.

21            THE COURT:  Mr. Ser.

22            MR. SER:  I always preface what I'm about to say by

23   saying I'm trying not to reiterate what is in my lengthy

24   sentencing letter and I thank the Court for being so

25   understanding and taking it this week.

Dc5icans ag                    SENTENCE

1          THE COURT:  Luckily, I had a two-day hearing scheduled

2     and it went away at the last minute, so I had some time on my

3     hands yesterday to read your voluminous submission.  But I did

4     read it all.

5          MR. SER:  I appreciate that.  My one-man show has

6     really cut into my time.

7          THE COURT:  I feel your pain.

8          MR. SER:  I wanted to start off by noting to the Court

9     that everyone sitting to your Honor's left is Mr. Cannella's

10    family.  They all came to court and are showing amazing support

11    for him.  Including his mom, who as I indicated, has been among

12    the most involved parents I've had in any case for a very long

13    time.  I spent a considerable time with his father.  His

14    stepmother, stepsiblings, cousins, grandmother, everyone has

15    come out of the woodworks for Mr. Cannella.  Calling me,

16    writing letters, and their showing up here today in support of

17    Mr. Cannella.  So I wanted to thank them for coming in.

18          I've gone on *ad nauseam* about the faults with 2G2.2,

19    and I'm not going to get into that.  I'm sure your Honor has

20    heard them over and over again and read numerous decisions and

21    seen God knows what else debating the issue.  I do think we

22    have such out-of-the-ordinary facts here with such an

23    out-of-the-ordinary defendant that would call for mitigation,

24    in addition to whatever issues the guidelines might have that

25    support my request.  I might go so far as to say even if the

Dc5icans ag                    SENTENCE

1    2G2.2 guidelines weren't so fraught with problems that the

2    equities we have in Mr. Cannella's background certainly would

3    be strong enough, come very close to being strong on their own

4    enough to support my request.

5         I'm asking the Court to sentence him in one of two

6    ways.  I think in the end, a year of custody is appropriate.

7    And that would be year of home confinement.  Whether the Court

8    includes that one year home confinement as a condition of

9    supervised release or as part of a two-year sentence which is

10   split, which the Court is legally entitled to do, I think that

11   is sufficient but not greater than necessary to satisfy the

12   parsimony provision in 3553(a) in this case.

13        Mr. Cannella is an young man who has been plagued with

14   health issues his entire life.  They continue to this day.

15   I've spoken with him many times while he's been at Westchester

16   County Jail.  There have been difficulties getting him the

17   medication he needs.  His body is starting to feel the

18   repercussions of not being able to regularly medicate and the

19   sarcoidosis is flaring up.  Simply stated, his health is

20   suffering.  And I do believe a prolonged sentence would make

21   that even worse for him.  We documented his health with the

22   exhibits attached in my letter.

23        The reports I submitted from Dr. Lau -- Mr. Lau, he's

24   not a doctor actually, Dr. Prentky and Dr. Murray were all

25   positive.  And on the psychological side of the health coin,

Dc5icans ag                    SENTENCE

1    all three seemed to be in agreement that Mr. Cannella is not a

2    danger to the community, he is not a pedophile.  Dr. Prentky

3    conducted Able Testing which is what the probation officer,

4    Stephanie Dunne, recommended be performed in her report.  And

5    we did that.

6            And according to Dr. Prentky, who is active in the

7    courts around here and very involved in child pornography

8    cases, he's indicated that the Able Testing has not revealed

9    anything that would suggest Mr. Cannella's a danger.  He's not

10   a pedophile.  And there is nothing to indicate, I believe

11   Mr. Lau agreed with this, that he's at any risk of reaching out

12   and committing any sort of hands-on offense.

13           So even assuming there to be some credit to the

14   slippery slope argument that comes up in child porn that

15   possession or receipt and distribution could lead into more

16   extensive or extreme conduct, I think that's belied by the

17   findings not only of someone that the defense retained but

18   Mr. Lau who is someone that Pretrial Services regularly uses.

19   And Dr. Murray actually was a therapist that Mr. Cannella

20   sought out and began seeing on his own literally a day after

21   the seizure occurred and before he ever was charged with a

22   crime.  He's been in contact with me and his letter clearly

23   provides wonderful insight into Dr. Cannella's willingness to

24   go for treatment and therapy.  He makes the trip up from White

25   Plains where his mother lives up to where Dr. Murray lives in

Dc5icans ag                     SENTENCE

1   Fishkill.  He travels up there every weekend to be able to

2   attend counsel.  He never missed.  He never had a problem.  He

3   was always involved, responsive as he was during Mr. Lau's

4   neurological exam and Dr. Prentky's.

5           So the results in those examinations are positive and

6   bode well and paint a picture of someone who is so different

7   than what the conduct paints.  How we end up finding ourselves

8   sitting with Mr. Cannella in the courtroom, although I didn't

9   touch on it in great detail in my own writing, Dr. Prentky,

10  Mr. Lau and Dr. Murray touch on it, Mr. Cannella was victimized

11  when he was a child.  An uncle of his had taken photos of him

12  and touched him inappropriately on more than one occasion.

13          Mr. Cannella is not making excuses.  He told Dr.

14  Prentky.  He's not saying what he did was because of that.  He

15  doesn't even want to fathom how much it might have influenced

16  his decision originally when he began looking at these

17  materials.  But to his credit that's never been an excuse.

18  That's something that happened.  He doesn't hazard a guess as

19  to how much it might have affected him, but he assumes full

20  responsibility for what he's done.  He doesn't expect that to

21  carry the day.  But I think that it's a factor that can't go

22  unnoticed here.  Certainly in the physicians' reports,

23  Mr. Lau's report, this is something that has to be dealt with

24  by Mr. Cannella.  He has to get treatment and therapy, not only

25  to deal with the possession issue, but to resolve that part of

Dc5icans ag                    SENTENCE

1    his own personal history that affects so many other parts of

2    his life and his family's life now at this point.

3             So what's paramount in this case?  There are so many

4    different things I could point out under 3553(a) but the one

5    thing I wanted to urge to the Court when I spoke was need of

6    treatment.  A year of custody for Mr. Cannella will be

7    significant.  He's never done more than five days.  This is 48

8    times longer than the five days he had done on the probation

9    case.  It's going to be a long period of time for him.  This

10   isn't a year and a day, this is a full year that he will do.  A

11   year of home detention will be an imposition upon him.  It's

12   not going to be easy.  At least one district court I cited

13   noted that it is punitive.  There are onerous conditions that

14   can be imposed and should be imposed, so it's not just a jaunt

15   for him and he doesn't look at it that way.

16            But these requests I think will get him sooner than

17   later to where he needs to be.  And that's in a room with a

18   psychologist, with a counselor, with some sort of treatment

19   provider.  And of course, we can all look and say, well, we

20   provide that sort of counseling or treatment in custody.  He's

21   going to go into custody, serve some sort of term, he can get

22   that when he goes to the FCI or a medical center.  But

23   Dr. Murray and even Dr. Prentky touch on the fact that the

24   counseling needed here is a bit different and we want it to be

25   successful.  And according to these doctors, and Mr. Lau might

Dc5icans ag                      SENTENCE

1   touch on it, I don't want to say he did, but I recall it

2   vaguely, it's important to have family involved with the

3   therapy and the treatment and the counseling.  That can't

4   happen when he's in custody.  It just can't.  The parents

5   aren't going to be allowed to go to the facility, much less be

6   able to travel to the facility, because they work.  Having the

7   family around according to Dr. Murray is important because it

8   assists in him opening up about it with his family and them

9   understanding what they need to do to help.

10          But his family has issues and they all need to work

11  through those things together.  Dr. Murray also touches on the

12  fact that you need a stable environment, one that's going to

13  encourage Mr. Cannella to be open, want to talk about it.  I

14  can't imagine a more difficult atmosphere to want to talk about

15  things like this than when you're in custody.  Even if you're

16  with other inmates who are in like situations where they talk

17  about it too.  You don't know who is going to say something.

18  You don't know who is going to talk about what Mr. Cannella

19  might have said.  And being in a custodial setting and being so

20  forthcoming about something that could get you hurt, tormented

21  in custody, isn't something that Dr. Murray thought would be

22  best for Mr. Cannella.  But putting him in a position where he

23  could be free to talk without repercussion is what he's urging.

24          I think home confinement allows your Honor to craft a

25  setnence that would serve all the purposes of 3553.  It will

Dc5icans ag                     SENTENCE

 1   get Mr. Cannella to where he needs to go so he can become a

 2   better person.  He's already proven that he is willing, able

 3   and wants to get this treatment.  He's a young man with a lot

 4   of potential.  He has a decent work history.  He was doing

 5   construction.  He's a union worker.  Creative thinker.

 6        Dr. Prentky's report is a little out of the ordinary

 7   in its structure and it's a lot of quotes taken right from

 8   Mr. Cannella.  And they strike me in certain places as he's a

 9   very forthcoming kid, and acknowledged what he did was dumb.

10   Dr. Prentky called the trait adolescence.  So I think with age

11   comes wisdom and hopefully that's where Mr. Cannella will get

12   to.  We want to give him the tools he can utilize.  I think

13   counseling and treatment is what he needs and he needs his

14   family to be around to support him.

15        Yes, he's Category II.  I haven't asked for anything

16   other than a Category II stipulated guidelines range because

17   that's what the plea agreement says.  Another dumb act.  He was

18   driving a car and dropped his friends off.  But it was a

19   five-day term of custody with probation.  And he knows there's

20   going to be a price to pay in the state court as well.  It's

21   unclear what the state will do.  Of course I know what I want

22   them to do but whether that happens is another story.  But I

23   think a year of custody in this case is sufficient given the

24   facts and given the difference between this case and a more

25   serious case.

Dc5icans ag                    SENTENCE

1          We have a limited number of files in this case.  We

2     don't have the tens of thousands we would usually see.  We

3     don't have the aggravating factors that commonly are associated

4     with defendants in Mr. Cannella's position.  We don't have any

5     history of convictions for sexual abuse.  We have no priors

6     related to any conduct like this.  No foreign convictions in

7     Canada to something like this.  He hasn't been deemed to be a

8     pedophile.  He hasn't been termed to have any sort of traits

9     that render him a danger to the community.  There are a host of

10     aggravating factors within the district, as I'm sure that your

11     Honor has seen, that make cases like this more problematic, and

12     crafting this sentence accounts for the differences between

13     those cases this case.  I think it's warranted if there is any

14     disparity based on the facts.  As I indicated, I think the

15     Court's in good company if the Court chooses to vary and impose

16     the sentence I'm asking for.  A lot of the courts, 70 percent,

17     think in this particular context, possession of child

18     pornography, the guidelines are too high.  This isn't a walk.

19     This isn't probation.  A year of custody is difficult.  Every

20     day will be for him.  I believe this is a severe enough

21     sentence that it falls right where it should under the 3553(a).

22          THE COURT:  Mr. Cannella, I'll hear you now if there's

23     anything you'd like to say before I sentence you.

24          THE DEFENDANT:  I just want to say that I'm terribly

25     sorry and I feel really bad about the revictimization from all

Dc5icans ag                      SENTENCE

1   the files that were on my computer.  I know what it's like to

2   know that someone is out there potentially looking at your own

3   pictures.  And it sickens me to know that I participated in

4   that.  I'm deeply regretful for that.

5           I also want to apologize to my family.  My family

6   stood by me, is here today.  My friends.  Everyone who didn't,

7   you know, disown me.  And I appreciate the support from them.

8           And I would also like to thank you for taking the time

9   to read over everything and weighing all factors for my

10   sentencing.  And I appreciate your consideration plus

11   everything that Mr. Ser just said.

12           THE COURT:  Thank you, Mr. Cannella.

13           I have to start with the sentencing guidelines, the

14   much maligned 2G2.2.  Base offense level is 18.  Two levels are

15   added because the material involved prepubescent minors.  Four

16   levels are added because some of the materials portrayed

17   sadistic or masochistic conduct or other depictions of

18   violence.  Two levels are added for the use of the computer.

19   Five levels are added for the number of images.  That takes us

20   to offense level 31.  This defendant gets three levels off for

21   his timely plea.  That puts him at level 28.  He's in Criminal

22   History Category II arising from the fact that he has a

23   conviction for aiding and abetting a burglary in 2008 and was

24   on probation for that offense at the time of this one.  So one

25   point for the conviction, two points for committing this

Dc5icans ag                    SENTENCE

1    offense while on probation.  That's a total of three criminal

2    history points and Criminal History Category II.  The range is

3    87 to 108 months.  The parties plea agreement referred to 57 to

4    71 months because they forgot about the four-level enhancement.

5    I don't know how both of these experienced lawyers missed it,

6    but it certainly jumped out at me when I saw the presentence

7    report, and it obviously jumped out at the presentence report

8    writer.

9              I recognize that a number of these enhancements,

10   certainly the computer one and perhaps the S&M one and the

11   prepubescent minors one, are going to be present in every case.

12   And I do agree that the guideline is not deserving of the

13   deference that judges usually pay to the guidelines, and by

14   deference I don't mean that they're bound by them, but they do

15   consider them a starting point, and in most cases they are the

16   result of some empirical methodology.  This guideline isn't the

17   result of the usual process that the Commission undertakes.

18             On the other hand, it does reflect something that I

19   take seriously and that is it reflects Congress' and by

20   extension society's revulsion at this kind of conduct.  I'm not

21   going to embarrass all of us by putting on the record any

22   details about what was in these images.  It would suffice to

23   say that they're horrific.  And I can understand why somebody

24   in Congress would think that anybody who gets any sort of

25   pleasure from looking at that sort of stuff is a dangerous

Dc5icans ag                    SENTENCE

1   individual, because most of us looking at that stuff are just

2   completely repulsed by it.

3        All that said, I don't think Mr. Cannella fits the

4   profile I so often see here for the reasons Mr. Ser has pointed

5   out.  I sentence a lot of people for this offense, more than

6   you think, and often times I'm extremely nervous if I show them

7   any leniency they're going to at least go back and do it again

8   and maybe hurt somebody.  I don't have any concern that

9   Mr. Cannella is going to hurt somebody.  And I have high hopes

10  that he won't do it again because I think his attitude is much

11  better than what I often see.

12        So addressing myself to the 3553(a) factors.  I've

13  already talked about the nature and circumstances of the

14  offense.  This stuff is just horrifying and to be able to want

15  to look at it is -- it's hard for me to understand.  And I'm

16  glad to see that Mr. Cannella understands it's not a victimless

17  crime and that the kids depicted in these photographs are

18  victimized every single day when somebody looks at them, and

19  that he contributed to that and that he and people like him who

20  trade these things on the Internet are creating a market for

21  images that can only be made through committing the most

22  revolting sorts of crimes against children.  So it's a very

23  serious offense.

24        I do recognize that there's no indication whatsoever

25  that Mr. Cannella has ever presented a danger to any child and

Dc5icans ag                    SENTENCE

1    I don't think he is a danger to any child physically.

2            It's to his credit that unlike some of the collectors

3    or connoisseurs of this material that we see where they save

4    every last bit of it and file it and cross-reference it and

5    treat it lovingly like a stamp collection, Mr. Cannella, it

6    seems, at least as to some of the images, browsed them but

7    didn't save them, and others he affirmatively deleted, although

8    not all of them.  But those are factors that also bode better

9    for him than for most child porn defendants that I sentence.

10            His history and characteristics cuts both ways.  He's

11    obviously a very bright person.  I can tell from the way he

12    spoke today and from some of the letters his family members

13    wrote about how he should be on Jeopardy and how he knows so

14    much about so many things.  And yet he was, I guess a polite

15    way for me to say it is he was an indifferent student.  And his

16    working history, although he did join the union, he doesn't

17    seem to have been working full-time, which may not be his

18    fault, the work may not have been there.  But the last couple

19    of years he's basically playing a lot of poker and being

20    supported by his parents and not making anything of himself.

21    And that is a shame for a person who clearly has the gray

22    matter to make something of his life.

23            And he was on probation when he did this.  I don't

24    think the offense for which he was on probation is so horrible.

25    It probably falls in the category of knuckle-headed, to use

Dc5icans ag                    SENTENCE

1    Mr. Cannella's words.  But when you're on probation you got to

2    take extra steps to toe the line, and Mr. Cannella did not do

3    that.

4         Also on the plus side besides his obvious intelligence

5    is the family support that he has and the fact that he's been

6    receptive to therapy.  I often see defendants who are charged

7    with this crime who are resistant and make excuses and

8    rationalize.  And it doesn't appear that Mr. Cannella is doing

9    that.  So I have some hope that the therapy is actually going

10   to be helpful for him.

11        Those first two factors relate to the defendant and

12   the case specifically.  The next set of factors relates to sort

13   of society at large.  The need for the sentence imposed to

14   reflect the seriousness of the offense, promote respect for the

15   law, provide just punishment, afford adequate deterrence, and

16   protect the public.  I think most of those don't counsel for a

17   lengthy sentence here.  Perhaps the only one that does is the

18   need to provide just punishment, a punishment that society will

19   recognize as fitting the crime.  Treatment is a factor in this

20   case.  I agree that treatment is more likely to be effective on

21   the outside than the inside.  If that were the only factor that

22   would make my job easy.  But of course that's not the only

23   factor.

24        I've considered all the 3553(a) factors, even the ones

25   that I haven't discussed, and essentially for the reasons set

Dc5icans ag                    SENTENCE

forth by Mr. Ser in his sentencing memorandum -- which is
excellent and should be Exhibit A when I have defendants who
have Federal Defenders and then they scrape together the
family's last two dollars to go hire a private lawyer not half
as good -- but essentially for the reasons stated by Mr. Ser, I
intend to sentence substantially below the sentencing guideline
range, and even substantially below the range that the parties
have stipulated.

I'm going to impose a sentence of 24 months
imprisonment.  That's going to be followed by seven years of
supervised release on the following conditions.  First, the
mandatory conditions.  The defendant shall not commit another
federal, state or local crime.  The defendant shall not
illegally possess a controlled substance.  The defendant shall
not possess a firearm or destructive device.  The defendant
shall cooperate in the collection of DNA as directed by the
probation officer.  The defendant shall register with the state
sex offender registration agency in any state where the
defendant resides, is employed, carries on a vocation, or is a
student, and shall provide proof of registration to the
probation officer.

I'm going to suspend the mandatory drug -- hold on a
second.  Maybe not.  I'm not going to impose a special
condition.  I'm going to impose the standard condition with
respect to drug-testing which is, if I remember, the defendant

Dc5icans ag                    SENTENCE

1    shall submit to one drug test within 15 days of release on

2    supervision and at least two unscheduled drug tests thereafter.

3    Defendant smoked an awful lot of weed in his teens up until

4    2007, but he has been on state probation since that time and I

5    assume if he had been continuing there would have been a

6    violation before this.  So I don't see the need for drug

7    treatment.  So I'm also imposing the normal mandatory

8    drug-testing condition.

9          I'm imposing the standard conditions of supervision

10   1-13 along with the following special conditions.  The

11   defendant shall undergo a sex offense specific evaluation and

12   participate in a sex offender treatment and/or mental health

13   treatment program approved by the probation officer.  The

14   defendant shall abide by all rules, requirements and conditions

15   of the sex offender treatment program, including submission to

16   polygraph testing.  The defendant shall waive his right of

17   confidentiality in any records for mental health assessment and

18   treatment imposed as a consequence of this judgment to allow

19   the probation officer to review the defendant's course of

20   treatment and progress with the treatment provider.  The

21   defendant will be required to contribute to the cost of

22   services rendered in an amount approved by the probation

23   officer based on ability to pay are availability of third-party

24   payment.

25          The defendant shall not have deliberate contact with

Dc5icans ag                    SENTENCE

1    any child under 18 years of age unless approved by the

2    Probation Department.  The defendant shall not loiter within

3    100 feet of schoolyards, playgrounds, arcades or other places

4    primarily used by children under the age of 18.

5            The defendant shall participate in the

6    computer/Internet monitoring program administered by the U.S.

7    Probation Office.  The defendant must provide the Probation

8    Office with advanced notification of any computers, automated

9    services, or connected devices, including smart phones, that

10   will be used during the term of supervision and that can access

11   the Internet.  The probation officer is authorized to install

12   any application as necessary to survey all activity on

13   computers or connected devices owned or operated by the

14   defendant.  The defendant may be required to pay the cost of

15   monitoring services at the monthly rate provided by the

16   Probation Office, which rates and the payment schedule for

17   which are subject to periodic adjustments by the Probation

18   Office.

19           The Probation Office will be notified by electronic

20   transmission of impermissible or suspicious activity or

21   communications occurring on such computer or connected device

22   consistent with the computer monitoring policy in effect by the

23   Probation Office.  As triggered by impermissible or suspicious

24   activity, the defendant shall consent to and cooperate with

25   unannounced examinations of any computer equipment owned or

Dc5icans ag                    SENTENCE

1    used by the defendant.  This examination shall include but it

2    is not limited to retrieval and copying of all data from the

3    computers, connected devices, storage media, and any internal

4    or external peripherals, and may involve removal of such

5    equipment for the purpose of conducting a more thorough

6    inspection.  The defendant shall submit his person and any

7    property, house, residence, vehicle, papers, computer, other

8    electronic communication or data storage devices or media and

9    effects to search at any time with or without a warrant by any

10   law enforcement or probation officer with reasonable suspicion

11   concerning a violation of a condition of probation or super,

12   excuse me, condition of supervised release or unlawful conduct

13   by the person, and by any probation officer in the lawful

14   discharge of the officer's supervision function.

15          The defendant is to report to the nearest Probation

16   Office within 72 hours of release from custody.  I recommend he

17   be supervised by his district of residence.

18          I'm imposing the mandatory one hundred dollar special

19   assessment which is due immediately.

20          I'm not going to impose a fine having considered the

21   factors in 18 U.S. Code 3572 because I don't believe the

22   defendant has the ability to pay.

23          Does either lawyer know of any legal reason why the

24   sentence I've described should not be imposed?

25          MR. SER:  No, your Honor.

Dc5icans ag                    SENTENCE

1          MR. GRAFF:  No, your Honor.

2          THE COURT:  Then the sentence I've described is the

3     sentence I impose.  It's the sentence I find sufficient but not

4     greater than necessary to serve the purposes of sentencing.

5          Mr. Cannella, you have the right to appeal your

6     conviction and sentence except to the extent you've given up

7     those rights through your guilty plea or your plea agreement

8     with the government.  If you think you have grounds to appeal

9     and are unable to pay for the costs of an appeal, you can apply

10    for permission to appeal without paying.  Any notice of appeal

11    must be filed within 14 days of the entry of the judgment of

12    conviction and Mr. Ser will assist you with that.

13         Let me say before you go, I really feel like I'm

14    sticking my neck out here.  Congress thinks you should get 87

15    to 108 months.  I'm giving you about a quarter of that.  I have

16    good reasons to do that.  I have high hopes for you

17    straightening it out and going on to lead a law-abiding life

18    and getting the help you need not only to avoid getting in

19    trouble again but to be more content in your personal life.

20    But I'm sticking my neck out in doing that.

21         You're going to be on supervised release for seven

22    years after you get out.  I hope you will regard the supervised

23    release not as more punishment but really a support that can be

24    helpful to you.  If you find yourself tempted to go back to

25    drugs or other behaviors that are bad for you and you tell them

Dc5icans ag                    SENTENCE

1  they can actually help you and get you into a program.  They

2  can get you support.  They can help you find employers who are

3  willing to take somebody with a record, help you with school

4  and financial aid and stuff like that.  I hope you don't regard

5  it as punishment.  I hope you regard it as something that's

6  going to help keep you on the straight and narrow.

7        If you should screw up on supervised release, they're

8  going to bring you back before me.  I have every expectation

9  that I'll still be here unless some misfortune befalls me.  And

10  I'm going to look back in your file and I'm going to say wow, I

11  gave that guy a sentence not only way below his guidelines, but

12  way below his plea agreement, a plea agreement that already

13  represented a big break that the government gave him.  And I'm

14  not going to be happy.  And I'm not going to be inclined to be

15  generous again.  But I hope that the fear of getting clobbered

16  by me should you violate supervised release will not even enter

17  your mind, because I hope you will be enough of a changed

18  person that you won't be inclined to violate any of your

19  conditions.  And for the reasons your lawyer has articulated so

20  well, I think there are many reasons to believe that you're

21  going to be a success story in terms of bouncing back from

22  this.  So I wish you the best of luck.

23        Any open counts or anything else?

24        MR. GRAFF:  No your Honor.

25        MR. SER:  Just one request.  Would the Court recommend

Dc5icans ag                    SENTENCE

1   to the Bureau of Prisons housing as near as possible in this

2   district, as near as possible to this district given his family

3   ties to White Plains and the area?

4            THE COURT:  Yes.  I'll recommend a facility as near as

5   possible to SDNY.  I don't know how much luck there will be

6   with that because this defendant has medical needs and they may

7   also want to put him in a sex offender program.

8            MR. SER:  Would the Court consider a second

9   recommendation just in case?  Would the Court consider Fort

10  Devens in Massachusetts?

11           THE COURT:  That's probably where they'll send him

12  anyway.  I don't like to say a specific facility.  I think

13  there's a SOMP program there but I don't like to micromanage

14  them if I don't have to.

15           All right, anything else?

16           MR. SER:  No, your Honor, thank you.

17           MR. GRAFF:  No, Judge.

18           THE COURT:  We are adjourned.

19           (Record closed)

20

21

22

23

24

25